DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JASON KLEINWAKS (NYBN 5335013 / DCBN 1049058)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6924
    FAX: (415) 436-7234
    jason.kleinwaks@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ANTHONY LAMBOY,<br><br>    Defendant. | **CASE NO. CR 06-266 CRB**<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO TERMINATE REMAINING SUPERVISED RELEASE TERM** |

    Defendant Anthony Lamboy moves under 18 U.S.C. § 3583(e) to terminate the remainder of his statutory minimum five-year supervised release term, approximately 31 months into his term of supervision.  For the reasons explained below, Defendant's request for early termination of supervised release should be denied.

I.    **BACKGROUND**

    A.    **Defendant's Underlying Offense**

    In his underlying conviction, Defendant was implicated and charged in connection with a large narcotic distribution scheme involving the San Francisco Bay Area Hell's Angels Motorcycle Club.

September 4, 2008 Presentence Investigation Report ("PSR") ¶ 17.  Using surveillance, telephone wiretaps, confidential sources, and undercover activities, investigators uncovered a large-scale drug distribution network, by which Defendant and others distributed methamphetamine and cocaine. *Id.*  The investigation resulted in the arrests of twelve or more individuals and the seizure of several pounds of crystal methamphetamine and fifty kilograms of cocaine.  *Id.*  During this investigation, Defendant was identified as a seller of large quantities of methamphetamine.  *See Id.* ¶¶ 61-72, 90-99.  During a transaction on March 4, 2006, he and another individual sold 161.4 grams of actual methamphetamine, and Defendant was additionally observed by agents to be involved in other drug distribution activities during which no drugs were seized.  *Id.* ¶ 106.

Defendant was initially charged on April 13, 2006 in a 27-count Indictment against nine defendants, and later charged in a June 16, 2006 33-count Superseding Indictment against twelve defendants.  PSR ¶¶ 1-2.  On March 19, 2008, Defendant pled guilty to Count Seventeen of the Superseding Indictment charging possession of methamphetamine with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C § 841(a)(1), agreeing that he was subject to a mandatory minimum prison sentence of ten years.  Dkt. 344, 345.  He was sentenced to the statutory minimum penalty of 120 months imprisonment as specified in the plea agreement.  Dkt. 499, 344 ¶¶ 8, 14.  Defendant was additionally sentenced to the statutory minimum of five years of supervised release.  Dkt. 499; *see also* 21 U.S.C § 841(b)(1)(A).  Defendant stated in this plea agreement that he agreed that five years of supervised release was a reasonable and appropriate disposition of this case.  Dkt. 344.

Defendant has now filed a motion seeking early termination of the statutory minimum supervised release term that both he and the government agreed was reasonable and appropriate in his plea agreement and that this Court chose to impose. *See* Dkt. 609.  Defendant has only served approximately 31 months of his 60-month term.

### B.    Defendant's Criminal History

Prior to his conviction on the underlying methamphetamine distribution charges, Defendant had incurred handful of other misdemeanor and felony convictions.  Defendant was convicted of a felony count of importing a controlled substance in 2001.  PSR ¶ 127.  He was twice convicted of misdemeanors for driving with a suspended license, both in 1999 and 2002.  *Id.* ¶¶ 126, 128.  He was

1  additionally convicted of a misdemeanor in 1998 for providing false identification to a peace officer. *Id.*

2  ¶ 125.

3       Defendant's criminal history also contains several significant arrests. In 1996, he was arrested

4  by the San Francisco Police Department for Rape by Force and Sexual Penetration with a Foreign

5  Object, though the case was dismissed. PSR ¶ 130. In 1997, Defendant was arrested after officers

6  located a clear plastic baggie of methamphetamine in his front waistband, but the charges were dropped

7  after a successful motion to suppress. *Id.* ¶ 131. In 1998, Defendant was arrested for Transportation and

8  Possession of Methamphetamine for Sale when he fled from officers who had entered the apartment of a

9  known drug dealer, jumping off a balcony to the ground. *Id.* ¶ 132. While methamphetamine was

10  located near where Defendant jumped, the charges were ultimately dismissed. *Id.*

11  **II.  LEGAL STANDARD**

12       Under 18 U.S.C. § 3583(e), a court may, "after considering the factors set forth in section

13  3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," "terminate a term of

14  supervised release and discharge the defendant released at any time after the expiration of one year of

15  supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the

16  modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant

17  released and the interest of justice." *Id.* As summarized in *United States v. Carter*, 2013 WL 2255875,

18  at *1 (N.D. Cal. May 22, 2013), the inquiry should encompass: the "nature and circumstances of the

19  offense and the history and characteristics of the defendant"; the need for the sentence imposed "to

20  afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the

21  defendant," "to provide the defendant with needed educational or vocational training, medical care, or

22  other correctional treatment in the most effective manner"; "the kinds of sentence and the sentencing

23  range established for ... the applicable category of offense committed by the applicable category of

24  defendant as set forth in the guidelines"; "any pertinent policy statement"; "the need to avoid

25  unwarranted sentence disparities among defendants with similar records who have been found guilty of

26  similar conduct"; and "the need to provide restitution to any victims of the offense." *Id.* (quoting 18

27  U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)).

28       District courts are accordingly afforded "broad discretion in determining whether to grant a

1   motion to terminate supervised release." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014).

2   However, "courts have required the defendant, as the party receiving the benefit of early termination, to

3   demonstrate that such a course of action is justified." *United States v. Weber*, 451 F.3d 552, 559 n.9

4   (9th Cir. 2006).

5   **III.   ARGUMENT**

6          Defendant should be required to complete his statutory minimum five-year term of supervised

7   release—the term of supervised release that he agreed was reasonable and appropriate in his plea

8   agreement, Dkt. 344—and early termination is not appropriate or warranted in this case.  Defendant has

9   not demonstrated that early termination of his supervised release is "justified."  *Weber*, 451 F.3d at 559

10  n.9.

11         Defendant's five-year term of supervised release is the *minimum* term permitted by the statute,

12  not just the required term as Defendant suggests.  Defendant was convicted of violating 21 U.S.C.

13  § 841(a)(1) by possessing with intent to distribute more than 50 grams of methamphetamine.  21 U.S.C.

14  § 841(b)(1)(A) requires courts to impose a term of supervised release of *at least* 5 years.  In support of

15  that term, the sentencing guidelines specify that "[t]he term of supervised release imposed shall be not

16  less than any statutorily required term of supervised release."  U.S.S.G. § 5D1.2(c); *see* 18 U.S.C.

17  § 3553(a)(4), (a)(5).  Contrary to Defendant's assertions, the Guidelines encourage courts to consider

18  early termination only in "appropriate cases" and provides an example where a defendant has

19  undertaken very clear steps and deliberate actions that address the attributes that contributed to his

20  underlying criminal behavior such that he or she has "reduc[ed] the risk to the public from further

21  crimes of the defendant."  U.S.S.G. § 5D1.2, Application Notes, n.5.  Here, Defendant has not

22  demonstrated that he has taken any such specific action that would negate the behavior that led him to

23  engage in large scale methamphetamine distribution.

24         Defendant's underlying conviction for possession with intent to distribute a large quantity of

25  methamphetamine and his role in a sprawling distribution network involving the Hell's Angels

26  Motorcycle Club weighs heavily in favor of requiring Defendant to, at the very least, complete

27  minimum period of supervised release specified by the statute under which he was convicted.  *See* 18

28  U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C).  Defendant's criminal history at the time of conviction was

foreboding, having been convicted of a felony related to drug trafficking, PSR ¶ 127, and arrested in connection with methamphetamine on two other occasions, *id.* ¶¶ 131-32.  The statutory minimum period of five years of supervised release reflects Congress's assessment of what period of supervision is appropriate to protect the public from further crimes of a defendant, *see* 18 U.S.C. § 3553(a)(2)(C), and the deterrent effect of such mandatory minimum terms is diminished if defendants can expect those terms to be reduced in the absence of extraordinary circumstances, 18 U.S.C. § 3553(a)(2)(B).

Defendant asserts that he presents a low risk to reoffend because of the length of time he has served so far on supervised release without reoffending or violating his supervision.  But courts in this district have repeatedly rejected this reasoning, observing that "[m]ere compliance with the terms of supervised release is what is expected, and without more, is insufficient to justify early termination." *United States v. Grossi*, 2011 WL 704364, at *2 (N.D. Cal. Feb. 18, 2011).  For example, the defendant in *United States v. Carter* asserted that, among other things, his "exemplary performance" on supervised release justified his request for early termination.  2013 WL 2255875, at *2 (N.D. Cal. May 22, 2013). The court denied his request, explaining that "[w]hile it [was] undisputed that the Defendant has complied with the terms and conditions of his supervised release, this alone is insufficient to justify early termination" because "[c]ompliance is what is expected of a Defendant on supervised release; it does not in and of itself constitute an adequate basis to terminate supervised release early." *Id.*; *United States v. Sahakari*, 2014 WL 3845166, at *2 (N.D. Cal. Aug. 4, 2014) (compliance "is expected from a person on supervision and does not constitute exceptional behavior that would warrant early termination of supervised release").  Defendant cites his reintegration into the community and potential job prospects in support of his motion, but these steps are "expected milestones rather than a change of circumstances rendering continued supervision no longer appropriate." *United States v. Bauer*, 2012 WL 1259251, at *2 (N.D. Cal. Apr. 13, 2012).  The Government's opposition to Defendant's motion is not at all intended to diminish Defendant's compliance with the terms of his release, which should be commended.  The Government's hope is that supervised release will continue to provide the support and structure that Defendant needs to complete his term of supervision successfully and allow him to continue his progress.

Defendant notes that he was employed for a period of time during his supervised release term

1   and asserts that the travel restrictions on his supervised release are holding him back from better

2   employment opportunities.  Dkt. 609 at 7.  He also states that he is taking coursework for toward a

3   commercial driver's license and that he has other educational opportunities and jobs offers.  Dkt. 609 at

4   8.  The defendant in *Carter* put forth a similar argument, claiming that "[t]he travel restrictions

5   associated with supervised release, as well as the negative stigma of being on supervised release in the

6   eyes of potential employers, [had] limited [his] employment opportunities and ability to meet all of his

7   family obligations.  2013 WL 2255875, at *2.  The court nevertheless found that there had "been no

8   showing that the restriction is either too harsh or inappropriately tailored to serve the general

9   punishment goals of § 3553(a)," and the defendant had pointed to no changed circumstances justifying

10  the termination of his supervision.  *Id.*  Here, Defendant confirms in his brief that he had already been

11  employed as welder while on supervision and does not claim that he would be unable to return to that

12  employment or find other employment within the Northern District of California.  Moreover, Defendant

13  acknowledges that he is not currently working and has been on worker's compensation for a significant

14  period of time.  Dkt. 609 at 7.  He "has not cited a specific instance for which the travel restriction

15  limited his ability to perform his job duties."  *Bauer*, 2012 WL 1259251, at *3.  Probation has raised

16  additional concerns about the Defendant's unverifiable income in its June 9, 2020 memorandum

17  submitted to the Court.  In fact, Probation explains that Defendant has spent the majority of his

18  supervised release term on worker's compensation but has failed to submit documentation of that

19  income.

20       Defendant also cites the need to avoid unwarranted sentencing disparities with similar

21  defendants.  *See* 18 U.S.C.A. § 3553(a)(6).  But early termination of supervised release below the

22  mandatory minimum term for such defendants would *create* disparities in sentencing—not avoid them.

23  The cases Defendant cites as examples are poor comparisons.  In the *Staub* matter, the Assistant U.S.

24  Attorney not only acquiesced in the defendant's request, but went so far as to write that "Mr. Staub's

25  success in his post-conviction life to date is perhaps the most remarkable example of rehabilitation that

26  undersigned counsel has witnessed in his career."  *United States v. Staub*, 3:10-cr-00429-JW (N.D.

27  Cal.), Dkt. 54.  Similarly, in the *Strahan* matter, the court initially denied the defendant's motion for

28  early termination, but granted termination two years later upon Probation's own request for termination,

1   without opposition from the U.S. Attorney's Office.  *United States v. Strahan*, 15-cr-00353-LJO (E.D.

2   Cal.), Dkt. 9.  Here, both Probation and the Government oppose Defendant's request.

3          Because Defendant "has not shown exceptionally good behavior or identified any unusual or

4   extraordinary circumstances rendering continued supervision no longer appropriate," and "the

5   seriousness of the underlying offenses and the Defendant's criminal history militate against early

6   termination," the Court should deny Defendant's motion seeking early termination of his statutory

7   minimum term of supervised release.  *Carter*, 2013 WL 2255875, at *2.

8   **IV.    CONCLUSION**

9          For the foregoing reasons, the Court should deny Defendant's Motion for Early Termination of

10  Supervised Release.

11

12  DATED:        June 19, 2020                              Respectfully submitted,

13                                                          DAVID L. ANDERSON
                                                            United States Attorney
14

15                                                          _____/s/ Jason Kleinwaks_____

16                                                          JASON KLEINWAKS
                                                            Assistant United States Attorney
17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on June 19, 2020, I mailed a copy of this brief to Defendant Anthony Lamboy by Fed Ex Overnight at the address provided to the United States Attorney's Office by the United States Probation Office as Defendant's registered place of residence.

_____/s/_____
RALPH BANCHSTUBBS
Legal Assistant
United States Attorney's Office
Northern District of California

U.S. Opp'n To Mot. To Terminate Supervised Release     8
CR 06-266 CRB